## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

In re:                                                          | Chapter 13
Elizabeth V. Grossnickle-Valencia,                             |
Debtor.                                                         |
                                                               |
                                                               | No. 19-34439
                                                               | Judge: LaShonda A. Hunt

## <u>NOTICE OF MOTION</u>

To Trustee:                               To Attorney:
Glenn B. Stearns                          David M. Siegel
**By Electronic Notice through ECF**      **By Electronic Notice through ECF**

To Debtor:
Elizabeth V. Grossnickle-Valencia
**By U.S. Mail**

PLEASE TAKE NOTICE that on Friday, June 18, 2021 at 10:15 AM, I will appear before the Honorable LaShonda A. Hunt or any Judge sitting in his stead or as soon thereafter and shall then and there present this Motion of the undersigned, a copy of which is attached hereto.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://zoomgov.com. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666, then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 161 165 5696 and the passcode is 7490911. The meeting ID and passcode can also be found on the judge's page and on the court's website.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Name:          RANDALL MILLER & ASSOCIATES, LLC          Respectfully Submitted,
               Attorneys for Plaintiff                   Randall S. Miller & Associates, LLC
Address:       120 N. LaSalle Street, Ste. 1140          */s/ James Major*
               Chicago, IL 60602                         James Major
Attorney:      ARDC#6014883                              Attorneys for Creditor
                                                         120 N. LaSalle Street, Suite 1140
                                                         Chicago, IL
Dated: June 1, 2021                                      (248) 335-9200
                                                         bankruptcy@rsmalaw.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: | Case No: 19-34439 |
| Elizabeth V. Grossnickle-Valencia, | Chapter: 13 |
| Debtor. | Hon. LaShonda A. Hunt |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

NOW COMES Movant, Carrington Mortgage Services, LLC, by and through its attorneys, Randall S. Miller & Associates, LLC, and shows unto this Honorable Court as follows:

1. That Movant is the holder of a mortgage on the real property owned by Debtor located at 1591 Hewes Street, Crete, IL 60417 (the "Property") and more particularly described as:

   LOTS 8 AND 9 IN BLOCK 3 IN ENTERPRISE SUBDIVISION OF PART OF SECTION 16, IN TOWNSHIP 34 NORTH, AND IN RANGE 14, EAST OF THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED SEPTEMBER 1, 1906, IN PLAT BOOK 15, PAGE 48, AS DOCUMENT 240327, IN WILL COUNTY, ILLINOIS.

   PIN: 23-15-16-123-008-0000

2. That Movant has an interest in a mortgage encumbering the Property, which mortgage is dated April 12, 2008, by and between Elizabeth Grossnickle, as Mortgagor, and Mortgage Electronic Registration Systems, Inc., solely as nominee for Universal Financial Group, Inc., its successors and assigns (the "Mortgage"). The Mortgage was recorded on May 16, 2008 with the Will County Recorder as Document Number R2008064385. The Mortgage was subsequently assigned to Movant pursuant to that certain Assignment of Mortgage, dated November 1, 2014 and recorded November 19, 2014 with the Will County Recorder as Document Number R2014102365.

3. That Debtor filed Chapter 13 Bankruptcy on December 6, 2019.

4. That as of June, 2021, the mortgage was delinquent and owing from April, 2020, in the total amount of $16,626.95, broken down as follows:

| | |
|---|---|
| April 1, 2020 to March 1, 2021 | $13,266.00 |
| Twelve (12) mortgage payments at $1,105.50 | |
| April 1, 2021 to June 1, 2021 | $ 3,364.56 |
| Three (3) mortgage payments at $1,121.52 | |
| Suspense balance | ($ 3.61) |
| **Total Arrearage** | **$16,626.95** |

5. That the mortgage loan for which the Movant has as a secured interest is in default for all payments coming due on and after April, 2020 and, unless cured, said default will result in the Property being sold at a foreclosure sale.

6. That the default in payments constitutes "cause" for terminating the automatic stay under Section 362(d)(1) of the Bankruptcy Code.

7. That pursuant to 11 U.S.C. §362 (d)(1) upon request of a party in interest, the Court shall grant relief from stay for cause, including lack of adequate protection of an interest in property of such party in interest.

8. That, further, there is little to no equity in the Property. The amount due and owing to Movant as of June 4, 2021 totals approximately $180,215.98.30. According to the Debtor's Schedules, the value of the Property is $87,000.00.

9. The lack of equity in the Property, which is unnecessary for an effective reorganization, entitles Movant to relief from the automatic stay under section 362(d)(2).

10. Movant has incurred attorney fees and/or costs in connection with this bankruptcy proceeding which have been included in the calculation of any default figure quotes herein subject to court approval, including:

   $850.00 for review of bankruptcy file and preparation of notice/motion for relief from the Automatic Stay, and prosecution of same

   $181.00 for Court filing fee.

11. Carrington Mortgage Services, LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or Debtor obtains a discharge and a foreclosure action is commenced on the Property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the promissory note. Movant will enforce the promissory note as transferee in possession. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage.

12. All communications sent by Movant in connection with proceeding against the Property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtor.

13.  That the entry of the order granting relief from the automatic stay shall be effective immediately upon entry, notwithstanding the provisions of FRBP §4001(a)(3);

WHEREFORE, Movant, its successors and assigns, respectfully requests that this court enter an Order Granting Relief from the Automatic Stay against Debtor for good cause shown pursuant to 11 U.S.C §362 (d)(1), and that entry of the order shall be effective immediately upon entry, notwithstanding the provisions of FRBP §4001(a)(3), and whatever other relief the court deems just and equitable.

June 1, 2021

Respectfully Submitted,
Randall S. Miller & Associates, LLC
*/s/ James Major*
James Major
Attorney for Creditor
120 N. LaSalle Street, Suite 1140
Chicago, IL 60602
(248) 335-9200
bankruptcy@rsmalaw.com

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | Case No: 19-34439 |
| Elizabeth V. Grossnickle-Valencia, | Chapter: 13 |
| Debtor. | Hon. LaShonda A. Hunt |

### CERTIFICATE OF SERVICE

      The undersigned, hereby certifies that I have served a copy of this Notice along with the Motion for Relief from Automatic Stay upon the parties listed below, as to the U.S. Trustee, CH 13 Trustee and Debtor's attorney via electronic notice on June 1, 2021 and as to Debtor by causing same to be mailed in a properly addressed envelope, postage prepaid, from 43252 Woodward Avenue, Bloomfield Hills, MI 48302 before the hour of 5:00 PM on June 1, 2021.

Debtor
Elizabeth V. Grossnickle-Valencia
1591 Hewes Street
Crete, IL 60417
**VIA REGULAR MAIL**

Trustee
Glenn B. Stearns
801 Warrenville Road
Suite 650
Lisle, IL 60532
**VIA ECF**

Debtor's Attorney
David M. Siegel
790 Chaddick Drive
Wheeling, IL 60090
**VIA ECF**

U.S. Trustee
Patrick S. Layng
219 S. Dearborn Street
Room 873
Chicago, IL 60604
**VIA ECF**

*/s/ Matthew Grubba*_____
Matthew Grubba

NOTE: Pursuant to the Fair Debt Collection Practices Act you are advised that this law firm is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

**REQUIRED STATEMENT**
**TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY**

All Cases:  Debtor(s) _____Elizabeth V. Grossnickle-Valencia_____ Case No. ___19-34439___ Chapter ___13___

All Cases:  Moving Creditor _____Carrington Mortgage Services, LLC_____ Date Case Filed ___12/06/2019___

Nature of Relief Sought: ☑Lift Stay        ☐ Annul Stay    ☐ Other (describe) _____

Chapter 13:  Date of Confirmation Hearing _____ or Date Plan Confirmed ___02/28/2020___

Chapter 7: ☐ No-Asset Report Filed on _____
              ☐ No-Asset Report not Filed, Date of Creditors Meeting _____

1.  Collateral
    a.    ☑ Home
    b.    ☐ Car   Year, Make, and Model _____
    c.    ☐ Other (describe)_____

2.  Balance Owed as of Petition Date      $ 169,994.83
    Total of all other Liens against Collateral $_____

3.  In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the amounts and dates of all payments received from the debtor(s) post-petition.

4.  Estimated Value of Collateral (must be supplied in *all* cases)  $ 87,000.00

5.  Default
    a.    ☐ Pre-Petition Default
          Number of months _____         Amount $ _____

    b.    ☑ Post-Petition Default
          i.    ☑ On direct payments to the moving creditor
                Number of months ___15___       Amount $    16,630.56
          ii.   ☐ On payments to the Standing Chapter 13 Trustee
                Number of months _____         Amount $ _____

6.  Other Allegations
    a.    ☑ Lack of Adequate Protection  § 362(d)(1)
          i.    ☐ No insurance
          ii.   ☐ Taxes unpaid        Amount $ _____
          iii.  ☐ Rapidly depreciating asset
          iv.   ☐ Other (describe) _____

    b.    ☑ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)

    c.    ☐ Other "Cause" § 362(d)(1)
          i.    ☐ Bad Faith (describe)_____
          ii.   ☐ Multiple Filings
          iii.  ☐ Other (describe) _____

    d.    Debtor's Statement of Intention regarding the Collateral
          i. ☐ Reaffirm   ii ☐ Redeem   iii. ☐ Surrender   iv. ☑ No Statement of Intention Filed

Date: _____06/01/2021_____                    _____/s/ James Major_____
                                                                              Counsel for Movant

(Rev. 12 /21/09)

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Post Suspense Balance** | | -$3.61 | | | | |

| Transaction Type | Transaction Date | Amount Received | Post-petition Due Date | Post Amt Due Per PCN | Contractual Amt Applied | Principal | Escrow | Posting Over/Short | Credit to Post Suspense | Debit from Post Suspense | Post Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 12/6/2019 | | | | | | | | | | |
| Post-Petition | 01/10/20 | $1,109.11 | 1/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | $3.61 | $3.61 | $0.00 | $3.61 |
| Post-Petition | 02/26/20 | $1,105.50 | 2/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | $0.00 | $0.00 | $0.00 | $3.61 |
| Post-Petition | 03/06/20 | $1,105.50 | 3/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | $0.00 | $0.00 | $0.00 | $3.61 |
| Post-Petition Payment Due | 06/01/21 | | 4/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$1,101.89 |
| Post-Petition Payment Due | 06/01/21 | | 5/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$2,207.39 |
| Post-Petition Payment Due | 06/01/21 | | 6/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$3,312.89 |
| Post-Petition Payment Due | 06/01/21 | | 7/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$4,418.39 |
| Post-Petition Payment Due | 06/01/21 | | 8/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$5,523.89 |
| Post-Petition Payment Due | 06/01/21 | | 9/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$6,629.39 |
| Post-Petition Payment Due | 06/01/21 | | 10/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$7,734.89 |
| Post-Petition Payment Due | 06/01/21 | | 11/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$8,840.39 |
| Post-Petition Payment Due | 06/01/21 | | 12/1/2020 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$9,945.89 |
| Post-Petition Payment Due | 06/01/21 | | 1/1/2021 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$11,051.39 |
| Post-Petition Payment Due | 06/01/21 | | 2/1/2021 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$12,156.89 |
| Post-Petition Payment Due | 06/01/21 | | 3/1/2021 | $1,105.50 | $1,105.50 | $774.38 | $331.12 | -$1,105.50 | $0.00 | $1,105.50 | -$13,262.39 |
| Post-Petition Payment Due | 06/01/21 | | 4/1/2021 | $1,121.52 | $1,121.52 | $774.38 | $347.14 | -$1,121.52 | $0.00 | $1,121.52 | -$14,383.91 |
| Post-Petition Payment Due | 06/01/21 | | 5/1/2021 | $1,121.52 | $1,121.52 | $774.38 | $347.14 | -$1,121.52 | $0.00 | $1,121.52 | -$15,505.43 |
| Post-Petition Payment Due | 06/01/21 | | 6/1/2021 | $1,121.52 | $1,121.52 | $774.38 | $347.14 | -$1,121.52 | $0.00 | $1,121.52 | -$16,626.95 |

| | | |
|---|---|---|
| In Re: | ) | BK No.: 19-34439 |
| Elizabeth V. Grossnickle-Valencia, | ) | |
| | ) | |
| | ) | Chapter: 13 |
| | ) | |
| | ) | Honorable LaShonda A. Hunt |
| | ) | |
| | ) | Joliet |
| Debtor(s) | ) | |

## ORDER TERMINATING THE AUTOMATIC STAY

THIS CAUSE COMING TO BE HEARD on the Motion of Carrington Mortgage Services, LLC, a secured creditor herein, for relief from the automatic stay, the Court having jurisdiction over the parties and the subject matter and due notice having been given;

WHEREFORE, IT IS HEREBY ORDERED:

(1) Pursuant to 11 U.S.C. §362(d), that Movant, its principals, agents, successors and/or assigns is granted relief from the automatic stay provisions of 11 U.S.C. sec. 362(a) by modifying said stay to permit them to pursue their state court remedies as to the property commonly known as 1591 Hewes Street, Crete, IL 60417 .

(2) Rule 4001(a)(3) is not applicable and Movant may immediately enforce and implement this order granting relief from the automatic stay.

Enter:

Honorable LaShonda A. Hunt
United States Bankruptcy Judge

Dated:

**Prepared by:**
/S/ James Major
Randall S. Miller & Associates, LLC
120 N. LaSalle Street, Suite 1140
Chicago, IL 60602
(P) 248.335.9200

MIN: ▮▮▮▮  Loan Number: ▮▮▮▮

# NOTE

FHA CASE NO.
▮▮▮▮

APRIL 12, 2008
[Date]

1591 HEWES ST, CRETE, ILLINOIS 60417
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
UNIVERSAL FINANCIAL GROUP, INC., AN ILLINOIS CORPORATION

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED
FOURTEEN THOUSAND SIX HUNDRED NINETY-FIVE AND 00/100 Dollars
(U.S.$ 114,695.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND 500/1000
percent ( 6.500 %) per year
until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might
result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning
on JUNE, 2008 . Any principal and interest remaining on the first day of
MAY, 2038 , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at 425 QUADRANGLE DRIVE, BOLINGBROOK, ILLINOIS 60440

or at such other place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 724.95
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal,
interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part
of this Note. (Check applicable box.)

☐ Growing Equity Allonge     ☐ Graduated Payment Allonge

☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid
for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower
makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender
agrees in writing to those changes.



## 6. BORROWER'S FAILURE TO PAY

### (A)    Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR AND 000/1000** percent ( **4.000 %**) of the overdue amount of each payment.

### (B)    Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C)    Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

_Elizabeth Grossnickle_ _____ (Seal)          _____ (Seal)
ELIZABETH GROSSNICKLE          -Borrower                                                        -Borrower

_____ (Seal)          _____ (Seal)
                                                -Borrower                                                        -Borrower

_____ (Seal)          _____ (Seal)
                                                -Borrower                                                        -Borrower


Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
     Mortgage Corp.

_Erla Carter-Shaw_
Erla Carter-Shaw, E.V.P.

# ALLONGE TO NOTE

LOAD # █████████

ALLONGE TO NOTE DATED 04/12/08

IN FAVOR OF   UNIVERSAL FINANCIAL GROUP, INC.


AND EXECUTED BY      ELIZABETH GROSSNICKLE

OF:                  1591 HEWES ST
                     CRETE, IL  60417

ON LOAN AMOUNT:      $114695.00


PAY TO THE ORDER OF

**Taylor, Bean & Whitaker Mortgage Corp.**

WITHOUT RECOURSE


BY  UNIVERSAL FINANCIAL GROUP, INC.

BY _____
         Joseph M. Savino

TITLE: PRESIDENT

UFGI 828



## Bank of America

**Home Loans**
Bank of America, N.A.
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Notice Date: July 9, 2011

ELIZABETH GROSSNICKLE
1591 HEWES STREET
CRETE, IL 60417



Property Address:
1591 HEWES STREET
CRETE, IL 60417

---

### AMENDED AND RESTATED NOTE
### State of Illinois

---

Origination Date: 25th day of August, 2009

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Bank of America, N.A. and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred thirty seven thousand six hundred forty seven and 98/100 (Dollars U.S.) $137,647.98 plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of five and no/100, (5.000%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on September 1, 2011. Any principal and interest remaining on the August 1, 2041 will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made to Payment Processing  PO Box 650070  Dallas, TX 75265, or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. 736.92. This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge        ☐ Growing Equity Allonge        ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of 4.00% of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first-class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

**10. GROUNDS FOR ACCELERATION OF DEBT**

(A) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under

this Note if:
  (i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

**(B) Sale Without Credit.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1702j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:
  (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

**(D) Regulations of HUD.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid. This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

_Elizabeth Grossnickle_    Dated _07-19-2011_
ELIZABETH GROSSNICKLE

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY: _Aida Pascual_
AIDA PASCUAL
ASSISTANT VICE PRESIDENT

This Instrument Prepared By:
CINDY OLSEN

After Recording Return To:
UNIVERSAL FINANCIAL GROUP, INC.
425 QUADRANGLE DRIVE
BOLINGBROOK, ILLINOIS 60440
Loan Number: 0008188650

**AEGIS Title Services**
**425 Quandrangle Drive**
**Bolingbrook, IL  60440**

R2008064385
20080516064385                    Receipt # T20080050666
LAURIE MCPHILLIPS  Will County Recorder  10P
DT       Date 05/16/2008            Time 13:13:06
Recording Fees:                          $30.75
IL Rental Hsng. Support Program:         $10.00

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

FHA CASE NO.

**MIN:** ████████████████████

THIS MORTGAGE ("Security Instrument") is given on   APRIL 12, 2008            .
The Mortgagor is   ELIZABETH GROSSNICKLE

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
UNIVERSAL FINANCIAL GROUP, INC.                                    ("Lender")
is organized and existing under the laws of   ILLINOIS                            ,
and has an address of   425 QUADRANGLE DRIVE, BOLINGBROOK, ILLINOIS 60440
.

Borrower owes Lender the principal sum of   ONE HUNDRED FOURTEEN THOUSAND SIX
HUNDRED NINETY-FIVE AND 00/100            Dollars (U.S. $  114,695.00       ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   MAY 1, 2038           .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in
WILL                              County, Illinois:

FHA ILLINOIS MORTGAGE - MERS
6/96                              Page 1 of 9              *DocMagic* eForms 800-649-1362
                                                          www.docmagic.com

Ilmtgz.fha.xml

SEE PRELIMINARY TITLE REPORT
A.P.N.: 23-15-16-123-008-0000

which has the address of    1591 HEWES ST

                                                    [Street]

       CRETE                    , Illinois      60417      ("Property Address"):

       [City]                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.  Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2.  Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time

FHA ILLINOIS MORTGAGE - MERS
6/96                                    Page 2 of 9              DocMagic *eForms* 800-649-1362
                                                                www.docmagic.com

Ilmtgz.fha.xml

are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

FHA ILLINOIS MORTGAGE - MERS
6/96
Page 3 of 9

DocMagic *eForms* 800-649-1362
www.docmagic.com

llmtgz.fha.xml

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not

paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to   60 DAYS   from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    **11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

    **13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

    **14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

    **15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

    **16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply

FHA ILLINOIS MORTGAGE - MERS
6/96                  Page 5 of 9            *DocMagic eForms* 800-649-1362
www.docmagic.com

to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

### NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding, and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Growing Equity Rider

☐ Planned Unit Development Rider ☐ Adjustable Rate Rider ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider ☐ Other [Specify]

lImtgz.fha.xml

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
ELIZABETH GROSSNICKLE        -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

Witness: _____

Witness: _____

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ilmtgz.fha.xml

State of Illinois
County of Will

The foregoing instrument was acknowledged before me this 12th day of April, 2008
by ELIZABETH GROSSNICKLE

"OFFICIAL SEAL"
SAUL R LEIBOWITZ
COMMISSION EXPIRES 02/02/10

Signature of Person Taking Acknowledgment

Notary Public
Title

(Seal)

Serial Number, if any

CHICAGO TITLE INSURANCE COMPANY

Commitment Number: ▮▮▮▮▮▮▮▮

**SCHEDULE C**

**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

LOTS 8 AND 9 IN BLOCK 3 IN ENTERPRISE SUBDIVISION OF PART OF SECTION 16, IN TOWNSHIP 34 NORTH, AND IN RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED SEPTEMBER 1, 1906, IN PLAT BOOK 15, PAGE 48, AS DOCUMENT 240327, IN WILL COUNTY, ILLINOIS.

23-15-16-123-008-0000
1591 HEWES STREET , CRETE , IL 60417

||||||||||||||||||||||||||||||||||||| **R2010002719**

Receipt # T20100002499

Karen A. Stukel    Will County Recorder    2P

DT    Date 01/08/2010    Time 14:57:57

Recording Fees:

IL Rental Hsng. Support Program:    $24.75

$10.00

-------------------------------------------------------------

**Above space for Recorder's Use Only**

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that Mortgage Electronic Registration Systems, Inc. a Corporation organized and existing under and by virtue of the laws of the State of Delaware, party of the first part, for and in consideration of the sum of TEN DOLLARS and other good and valuable consideration, the receipt whereof is hereby acknowledged granted, assigned and transferred to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP all interests in and under that certain Mortgage dated 4/12/2008 executed by Elizabeth Grossnickle a/k/a Elizabeth V. Grossnickle, Grantor(s), to Mortgage Electronic Registration Systems, Inc. as Nominee for Universal Financial Group, Inc.. Said Mortgage was recorded/registered with the recorder/registrar for Will County, Illinois on 05/16/2008 as Document Number R2008064385 and which Mortgage covers the following described property, to-wit:

LOTS 8 AND 9 IN BLOCK 3 IN ENTERPRISE SUBDIVISION OF PART OF SECTION 16, IN TOWNSHIP 34 NORTH, AND IN RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED SEPTEMBER 1, 1906, IN PLAT BOOK 15, PAGE 48, AS DOCUMENT 240327, IN WILL COUNTY, ILLINOIS.

Commonly known as:     1591 Hewes Street
Crete, IL 60417

PIN 23-15-16-123-008

together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage.

Pg. 1 of 2   File #14-09-37121 CFC

IN WITNESS WHEREOF, said party of the first part has caused this instrument to be signed by its Authorized Signator this November 17, 2009.

Mortgage Electronic Registration Systems, Inc.

BY: _____

**William McAlister**
    Authorized Signator

STATE OF Illinois

              |   SS

COUNTY OF DuPage

I, _____**Kristin Madison**_____, the undersigned Notary Public, do hereby certify that -
**William McAlister**_____ who is personally known to me and acknowledged said instrument to be executed by him/her.

GIVEN under my hand and Seal this _17_ day of _November_, 20_09_

_____
  Notary Public             SEAL

Prepared by and mail to:
Codilis & Associates, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
14-09-37121

**DOCUMENT CONTROL DEPT.**

OFFICIAL SEAL
KRISTIN MADISON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/04/12

Recording Requested By:
**Bank of America**
Prepared By: **Diana De Avila**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN** ·
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**



DocID#
Tax ID:        **23-15-16-123-008-0000**
Property Address:
**1591 Hewes St**
**Crete, IL 60417-3117**
IL0v2-AM 30546894    10/27/2014  GCA731B

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ **R2014102365**
                    Receipt # T20140031170
**Karen A. Stukel    Will County Recorder   2P**
LH        Date 11/19/2014          Time 15:41:08
Recording Fees:                          $38.75
IL Rental Hsng. Support Program:         $ 9.00

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **CARRINGTON MORTGAGE SERVICES, LLC** whose address is **1610 E. ANDREW PL. SUITE B150, SANTA ANA, CA 92705** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Beneficiary:          **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR UNIVERSAL FINANCIAL GROUP, INC., ITS SUCCESSORS AND ASSIGNS**

Borrower(s):          **ELIZABETH GROSSNICKLE**

Date of Mortgage: **4/12/2008**          Original Loan Amount: **$114,695.00**

Recorded in **Will County, IL** on: **5/16/2008**, book **N/A**, page **N/A** and instrument number **R2008064385**

Property Legal Description:
**THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS: LOTS 8 AND 9 IN BLOCK 3 IN ENTERPRISE SUBDIVISION OF PART OF SECTION 16, IN TOWNSHIP 34 NORTH, AND IN RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED SEPTEMBER 1, 1906, IN PLAT BOOK 15, PAGE 48, AS DOCUMENT 240327, IN WILL COUNTY, ILLINOIS.   23-15-16-123-008-0000 1591 HEWES STREET, CRETE, IL 60417**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
—— NOV 0 1 2014

                    BANK OF AMERICA, N.A., SUCCESSOR BY
                    MERGER TO BAC HOME LOANS SERVICING, LP,
                    FKA COUNTRYWIDE HOME LOANS SERVICING
                    LP

                    By: _____
                            Luis Roldan            ,
                        Assistant Vice President



State of **California**
County of **Ventura**

On **NOV 0 1 2014** before me, _____**Ceci Rodriguez**_____, Notary Public, personally
appeared _____**Luis Roldan**_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____**Ceci Rodriguez**_____ (Seal)
My Commission Expires: _____**Exp. 5/26/18**

CECI RODRIGUEZ
COMM.# 2069533
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 26, 2018

DocID#    **9022271579411185**